# IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

vs.

**JOSHUA KURT DELA CRUZ,**
DOB: 12/10/1987

Defendant.

CRIMINAL CASE NO. **CF0532-24**

DECISION AND ORDER DENYING
THE OAG'S STATEMENT OF
OBJECTION 7 GCA § 6107
AND MOTION TO DISQUALIFY

## INTRODUCTION

This matter is before the Honorable Maria T. Cenzon upon the Office of the Attorney General's (the "Office of the Attorney General" or the "OAG") Statement of Objection 7 GCA § 6107 and Motion to Disqualify (the "Objection"). The OAG objects to the Honorable Alberto E. Tolentino's (hereinafter "Judge Tolentino") competency to preside over the above-captioned matter under 7 GCA § 6105 and requests his disqualification pursuant to 7 GCA § 6107.

Having considered the Objection and Answer of Judge Tolentino, as well as the applicable statutes and case law and the relevant portions of the record, this Court issues the following Decision and Order **DENYING** the Office of the Attorney General's request to disqualify Judge Tolentino and reassign this case.

//

//

//

# PROCEDURAL AND FACTUAL BACKGROUND

## A. The Brief Procedural History of this Case and Objection to Judge Tolentino Assignment.

On July 30, 2024, Defendant Dylan Keanu Taimanglo (the "Defendant") was charged via Magistrate Complaint with Possession of a Schedule II Controlled Substance (As a 3rd Degree Felony) and appeared before Magistrate Judge Benjamin C. Sison, Jr. for a Magistrate's Hearing. On August 1, 2024, the case was assigned, pursuant to 7 GCA § 4103, to Judge Tolentino. Ntc. of Judge Assignment (Aug. 1, 2024). On August 19, 2024, the Grand Jury returned a True Bill indicting the Defendant of the charge of Possession of a Schedule II Controlled Substance (As a 3rd Degree Felony). *Indictment* (Aug. 19, 2024). On August 2, 2024, the OAG filed its Objection. On August 5, 2024, Judge Tolentino filed his Answer to Statement of Objection. Ans. To Stmt. of Objection (Aug. 5, 2024) (the "Answer"). On August 5, 2024, this Court was designated as the Recusal Judge to rule on the Objection. Ntc. of Assignment of Recusal Judge (Aug. 5, 2024). On August 6, 2024, this Court issued its CR1.1 Form 3 taking the matter under advisement on the briefs. CR1.1 Form 3 (Notice of Hrg. or Submission on Briefs (Aug. 6, 2024). On August 14, 2024, the People filed a "People's Response to Judge Tolentino's Answer to Statement of Objection 7 GCA [sic]" (the "Response"). Response (Aug. 14, 2024). Defendant has not joined in the People's Objection nor otherwise sought to disqualify Judge Tolentino.

### 1. The Basis of OAG's Objection.

The gravamen of the OAG's Objection is that Judge Tolentino is disqualified from presiding over all cases involving the Office of the Attorney General based upon the mandate of 7 GCA § 6105(a) requiring the judge to "disqualify himself … in any proceeding in which his … impartiality might reasonably be questioned …." Objection at p. 2 (citing 7 GCA § 6105(a)). The OAG alleges that "knowing all the facts and understanding the context involving Judge

Tolentino's history of disqualifying himself where the AG was involved, it is clear that Judge Tolentino is a disqualified judge in any case where the AG Moylan is involved." Objection at p. 5. Other than Judge Tolentino's past *sua sponte* recusals based upon AG Moylan's biological relationship to his stepchildren – the last of which was nearly two years ago – the OAG alleges no specific facts, asserted by someone with personal knowledge of such facts, which purportedly invoke the provisions of Section 6105.[1] Instead, the Objection only iterates the finding in *People v. Taitingfong, et al.,* Superior Court Criminal Case No. CF0024-24 (June 4, 2024)(Iriarte, J.) that Judge Tolentino was disqualified in that case based upon factors considered in that particular case. Moreover, the "Verification" executed by Chief Prosecutor Rudolph purporting to be "true and correct" also disavows the accuracy of "factual matters averred on information and belief." Objection at p. 8.

Nevertheless, the Objection identifies two purportedly disqualifying factors, the first of which places the blame squarely upon the Superior Court of Guam and the second upon a "familial relationship" between Judge Tolentino and Attorney General Douglas Moylan (hereinafter "Attorney General Moylan," "Mr. Moylan" or "Moylan") which purportedly requires Judge Tolentino to recuse himself, specifically:

> (1) The Superior Court should have prevented Judge Tolentino from handling matters involving the Attorney General of Guam, as he had previously disqualified himself *sua sponte,* from **all matters** involving Douglas B. Moylan pursuant to 7 GCA § 6105 and 6106; and
>
> (2) The familial relationship between Judge Tolentino and Attorney General Moylan which constituted the grounds for Judge Tolentino's *sua sponte* disqualifications and have not changed. [sic]

---

[1] The Court finds it significant that the allegations purportedly giving rise to a conflict are only advanced by Acting Chief Prosecutor Rudolph and that no Declaration made under penalty of perjury by Attorney General Moylan – who is the only individual other than Judge Tolentino who would have firsthand knowledge of any ongoing "close personal relationship" between himself and Judge Tolentino – was submitted to provide a factual basis for the disqualification.

Objection at p. 2 (emphasis in original).

Citing to the Guam Supreme Court case of *San Agustin v. Superior Court of Guam*,[2] the OAG posits, "the Superior Court must align its process for assigning judges to the record of a prospective judge's history of disqualification." Objection at pp. 6-7. In short, the OAG argues that, in assigning cases to judicial officers, the Superior Court of Guam should disregard multiple provisions of the Guam Supreme Court's administrative rule, including the "case assignment" rule and the rule governing the disqualification of a judicial officer[3] merely because Judge Tolentino had routinely recused himself in cases involving Mr. Moylan through October 2022 and before the latter assumed his elected office as Attorney General in 2023. By further implication, the OAG asks this Court to find that the Superior Court should have ignored the substantive and procedural disqualification provisions of 7 GCA §§ 6105 and 6106 and further omit Judge Tolentino from the random assignment of cases which involve the OAG (including criminal cases) because the judge previously recused himself from presiding over cases in which Mr. Moylan represented a defendant on the grounds that Mr. Moylan "is the father of [his] stepchildren." Objection at p. 2.

### 2. Judge Tolentino's Answer.

On August 5, 2024, Judge Tolentino filed his Answer to Statement of Objection ("Answer"). His response is lengthy and detailed, and the Court finds the following responses, made under penalty of perjury, particularly relevant to this Court's recusal determination:

---

[2] 2024 Guam 2. Curiously, the first "factor" has less to do with Judge Tolentino's actions or purported inaction and seems to be more of an action to compel the Superior Court to "do" an act – that is, omit Judge Tolentino from the case assignment procedures of the administrative rule based upon a disqualifying factor. This would seem to be more appropriate under a *writ* proceeding, possibly before the Guam Supreme Court, ironically akin to the writ proceeding described in detail by the Guam Supreme Court in *San Agustin*, the OAG's principal case. *See, San Agustin* at ¶¶ 35-41.

[3] Administrative Rule No. 24-001 (March 6, 2024). Section III of AR24-001 establishes the procedure for the assignment of cases. Section IV.A. addresses the assignment of cases upon the disqualification of a judge and the assignment of the recusal judge.

¶ 6. That at Mr. Moylan's request, a meeting between him and the undersigned, the undersigned's chamber staff, the Administrator of the Courts, and Mr. Moylan's transition chairperson, Mr. Wilfred Aflague, occurred in December 2022;

¶ 7. That at this meeting, Mr. Moylan assured me and the other members in attendance that he perceived no conflict in his election as the Attorney General and the prosecution of criminal cases before the undersigned. It was agreed that the circumstances underlying my recusal in matters that Mr. Moylan was a lawyer no longer existed, to wit: that during my term as the Magistrate judge I had routinely recused myself from all matters where Mr. Moylan was the attorney of a party before me on the basis that he was the father of my minor step-children and that the minor step-children were members of and resided in the household maintained by me and my wife and that as of even date, both step-children have now reached majority and adulthood and have been residing at their own residences in Guam and in the U.S. Mainland;

¶ 8. That Mr. Moylan never made an appearance as a lawyer in this case;

¶ 9. That neither Mr. Moylan nor the Office of the Attorney General had ever challenged or objected to me presiding over this case until the instant Statement of Objection and Motion to Disqualify filed herein;

¶ 12. That additionally movant has not explained why or how the fact that Mr. Moylan is the biological father of the undersigned's stepchildren requires disqualification of the undersigned;

¶ 14. That my wife Doris L.G. Tolentino and Attorney General Moylan were divorced on June 13, 1997, and that there were two minor children at the time of the dissolution of marriage, to wit: Brandon (born 1990) and Angela (born 1992);

¶ 15. That my wife and I have been together since 2001 and that we were married civilly in 2005 and eventually in the Roman Catholic Church in December 2023;

¶ 17. That since my wife and I have been together I have never observed Mr. Moylan and my wife involved in any sense in co-parenting the children of their marriage as the children have been raised and provided with protection and care to ensure their healthy development into adulthood, primarily by my wife and me, and that they are in fact adults able to conduct and make their own decisions in life;

¶ 18. That based upon the foregoing averments, the fact that Attorney General Moylan is the biological father of the undersigned's step-children

provides no basis for disqualification under 7 GCA § 6105(b) or that the undersigned's "impartiality might reasonably be questioned" as required under subsection (a);

¶ 19. That "[u]nder subsection 6105 (a), what matters is not "actual bias" but "the appearance of bias." *Van Dox* at ¶ 32 (citing *Dizon v. Super. Ct. (People),* 1998 guam 3 ¶ 10 n. 3). The appearance of bias is judged from the standard of a "reasonable person" who knows all the facts, and understands the "contexts of the jurisdictions, parties, and controversies involved," including such "realities of the Guam judicial system" as the relatively small number of lawyers in the Guam bar and "the nature of Guam families." *Id.* (citation omitted).

¶ 30. ...The recusal judge [in <u>People v. Taitingfong,</u>] did not carefully examine or consider the realities that my wife and Mr. Moylan have been divorced for close to twenty-seven years and that the children of their marriage are adults living on their own and well over the age of majority and that no reasonable person who knows all the facts and understands the contexts of the jurisdiction, parties and controversies involved in the Guam judicial system would conclude that there exists an appearance of bias requiring my disqualification in this matter. ... .

Answer at ¶¶ 6 – 9, 12, 14, 15, 17 – 19, 30.

### 3. The People's Response.

On August 14, 2024, the OAG filed an unsolicited *People's Response to Judge Tolentino's Answer to Statement of Objection 7 GCA [sic]*, arguing that (1) the OAG's Objection is timely because it was filed and served upon Judge Tolentino on August 2, 2024 – one (1) day after the judge was assigned to preside over this matter on August 1, 2024; and (2) that Judge Tolentino is biased *per se* pursuant to California Code of Civil Procedure CCP § 170.1, which "specifically states that judges married to the ex-wives of lawyers appearing before them are disqualifiable." Response at p. 3. The Response does not address or contest any of the averments in Judge Tolentino's Answer, but simply repeats that "given the significant and continuing relationship he has with AG Moylan's ex-wife and children" he is disqualified from all cases involving Attorney General Moylan and, therefore, the Office of the Attorney General.

## DISCUSSION AND ANALYSIS

**A.     The Law Governing Judicial Disqualification Is Set Forth in Guam Statute and In the Model Code of Judicial Conduct.**

**1.  Guam Statutory Mandates.**

Judicial disqualifications are governed by the substantive rules of 7 GCA § 6105 and the procedural rules of 7 GCA §§ 6106 and 6107. The relevant portion of the disqualification statute is Section 6105(b)(5), which requires that:

> (b) A Judge shall also disqualify himself or herself in the following circumstances, but if, following complete disclosure to all parties in the proceeding of the reasons for his or her disqualification, all parties agree to having the Judge continue to sit in the proceedings, he or she need not disqualify himself or herself:
>
> > (5) Where he or she or his or her spouse, ***or a person within the third degree of relationship to either of them***, or the spouse of such person:
> > > (A) is a party to the proceeding, or an officer, director, or trustee of a party;
> > > (B) is acting as a lawyer in the proceeding ....[4]

Correspondingly, Section 6106 compels a judge to disclose a disqualification enumerated under 6105:[5]

> Whenever a Justice or Judge shall have knowledge of any fact or facts which, ***under the provisions of 6105 of this Chapter***, disqualify him or her to sit or act as such in any action or proceeding pending before him or her, it shall be his or her duty to declare the same in open court and cause a memorandum thereof to be entered in the minutes. It shall be the duty of the clerk to transmit forthwith a copy of such memorandum to each party or his or her attorney who shall have appeared in such action or proceeding, except such parties as are presented in person or by attorney when the declaration is made.

---

[4] 7 GCA § 6105(b)(5) (emphasis added).
[5] 7 GCA § 6106 (emphasis added).

If a judge fails to disclose a disqualifying factor under Section 6105, then, pursuant to Section 6107, any *party* to the action who has appeared in the case may raise the objection to competency.[6] In this regard, Section 6107 provides, in relevant part, as follows:

Whenever a Justice or Judge who ***shall*** be disqualified under the provisions of this Chapter to sit or act as such in any action or proceeding pending before him or her neglects or fails to declare his or her disqualification in the manner provided by this Chapter, ***any party to such action or proceeding who has appeared*** therein may present to the court and file with the clerk a written statement objecting to the hearing of such matter or any trial of any issue of fact or law in such action or proceeding before such Justice or Judge, and setting forth the fact or facts constituting the ground of the disqualification of such Justice or Judge. Copies of such written statement shall forthwith be served by the presenting party on each party, or his or her attorney, who has appeared in the action or proceeding and on the Justice or Judge alleged in such statement to be disqualified.

Within ten (10) days after the service of such statement as above provided, or ten (10) days after the filing of any statement, whichever is later in time, the Justice or Judge alleged therein to be disqualified may file with the clerk his or her consent in writing that the action or proceeding continue without him or her, or may file with the clerk his or her written answer admitting or denying any or all of the allegations contained in such statement and setting forth any additional fact or facts material or relevant to the question of his or her disqualification. The clerk shall forthwith transmit a copy of the Justice's or Judge's consent or answer to each party or his or her attorney who shall have appeared in such action or proceeding. Every such statement and every answer shall be verified in the manner prescribed for the verification of pleadings. ***The statement of a party objecting to the Justice or Judge on the ground of his or her disqualification shall be presented at the earliest practicable opportunity after his or her appearance and discovery of the facts constituting the ground of the Justice's or Judge's disqualification, and in any event before the commencement of the hearing of any issue of fact in the action or proceeding before such Justice or Judge.***

No Justice or Judge who shall deny his or her qualification shall hear or pass upon the question of his or her own disqualification, but in every case the question of the Justice's or Judge's disqualification shall be heard and determined by some other Judge. The Presiding Judge, or next senior Judge, if it is the Presiding Judge's disqualification that is being requested, shall make such assignment within five (5) days after receiving from the clerk

---

[6] 7 GCA § 6107 (emphasis added).

the notice that the statement of disqualification has been filed. In the case of a Justice's disqualification, the matter shall be heard by the Supreme Court constituted without the questioned Justice.

If such Judge admits his or her disqualification, or files his or her written consent that the action or proceeding be tried before another Judge, or fails to file the answer within the ten (10) days allowed, or if it shall be determined after the hearing that he or she is disqualified, the action or proceeding shall be heard and determined by another Judge of the Superior Court who is not disqualified. Such other Judge shall be assigned in the same manner as the Judge who was disqualified was assigned to hear the case initially.

## 2. Model Code of Judicial Conduct: Canon 3

Canon 3 of the Model Code of Judicial Conduct[7] (the "Model Code") mandates that "[a] judge shall perform the duties of judicial office impartially and diligently," and 3E.(1)(d)(i) and (ii) of the Model Code's disqualification factors mirror those of 7 GCA § 6105(b)(5)(A) and (B):

E. Disqualification.

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
> (d) the judge or the judge's spouse, or a person *within the third degree of relationship* * to either of them, or the spouse of such a person:
> (i) is a party to the proceeding, or an officer, director or trustee of a party;
> (ii) is acting as a lawyer in the proceeding; ....

**B.    The OAG has waived its right to object to Judge Tolentino's qualification to preside over cases involving the Office of the Attorney General.**

As highlighted, above, Section 6107 requires that the statement of a party objecting to the Judge on the ground of his disqualification shall be presented "at the earliest practicable

---

[7] The ABA's Canon of Judicial Ethics shall apply to and govern the conduct of Judges of the Superior Court of Guam. 7 GCA § 6103. The Model Code of Judicial Conduct applicable in Guam was adopted by the House of Delegates of the American Bar Association on August 7, 1990, and amended on August 6, 1997, August 10, 1999, and August 12, 2003. It is hereinafter referred to as the "Model Code."

opportunity after his or her appearance and discovery of the facts constituting the ground of the Justice's or Judge's disqualification, and in any event before the commencement of the hearing of any issue of fact in the action or proceeding before such Justice or Judge." 7 GCA § 6107 (emphasis added). The Guam Supreme Court in *Van Dox* has confirmed that statements of objection shall "be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." *Van Dox v. Super Ct. (Alcorn)*, 2008 Guam 7 ¶ 44. Thus, the controlling law in Guam "[w]ith respect to the statutory provision requiring that disqualification be urged at the 'earliest practicable opportunity,' the intention is 'clear that failure to comply with the provision constitutes a ***waiver***.'" *Id.* ¶ 45 (quoting *Caminetti v. Pac. Mut. Ins. Co. of Cal.*, 139 P.2d 930, 933 (Cal. 1943) (emphasis added)). A finding of timeliness should be construed liberally in the interest of justice. *Id.* ¶ 45 (citing *Eagle Maint. & Supply Co. v. Super Ct.*, 16 Cal. Rptr. 745, 747 (Dist. Ct. App. 1961)). A timely statement of objection is made "prior to any hearing before the challenged judge in the matter." *Id.* ¶ 46 (citing *Hollingsworth*, 236 Cal. Rptr. at 195-96). *Van Dox* also cites to *People v. Panah*, where the court held a disqualification untimely because the facts of the case were known in early September, but the moving party waited until the eve of trial in November to move for disqualification. *Id.* ¶ 46 (citing *People v. Panah*, 107 P.3d 790, 824).

More recently, in *People v. Wia*, 2020 Guam 17, the Guam Supreme Court applied the "silence-by-waiver" rule adopted in *San Union, Inc. v. Arnold*, 2017 Guam 10, and held that "[r]ather than interpreting "agree" to mean that the parties must expressly agree to waive the judge's disqualification, we held that remaining silent constitutes waiver, at least in the context of 7 GCA § 6105(a), "[t]o avoid the possibility of parties 'l[ying] in wait, raising the recusal issue only after learning the court's ruling on the merits.' " *Id.* (quoting *Phillips v. Amoco Oil Co.*, 799

F.2d 1464, 1472 (11th Cir. 1986), *cert. denied*, 481 U.S. 1016 (1987)). Thus, Guam allows for the waiver of Section 6105(b) conflicts by the silence of the party who sits on his right to object. *Id.* at ¶ 29.[8]

In his Answer, Judge Tolentino raised the issue of timeliness, stating "[t]hat neither Mr. Moylan nor the Office of the Attorney General had ever challenged or objected to me presiding over this case until the statement of objection and motion to disqualify. . ." Answer at ¶ 9. That is to say, the OAG and Mr. Moylan knew since their meeting in December 2022, that Judge Tolentino would be assigned to preside over criminal cases which Mr. Moylan, as the Attorney General of Guam, would bring in the name of the People of Guam. Despite its urging that the Court apply the reasonable person standard who has "knowledge of all the facts," it is significant that the OAG does not challenge Judge Tolentino's description of a meeting held between them and their staff in December, 2022, where the judge and Mr. Moylan discussed the precise question of whether a conflict would exist "in [Mr. Moylan's] election as the Attorney General and the prosecution of criminal cases before the undersigned" and "[i]t was determined that the circumstances underlying my recusal in matters that Mr. Moylan was a lawyer no longer existed." Answer at ¶¶ 6, 7.

Thus, it is uncontroverted that, since 2022, Mr. Moylan and the OAG knew that Judge Tolentino is assigned by the Superior Court of Guam, applying the Administrative Rule, to preside over criminal cases which are brought in the name of the People of Guam by the OAG, through Attorney General Moylan. Based upon the "silence-by-waiver" rule most recently reiterated in

---

[8] See also, *Charette v. Charette*, 60 A.3d 1264, 1270-1271 (Maine 2013) (judge had hired a party's brother-in-law to do construction work for him and his daughter was close friends with the same party's daughter, opposing party should have raised an objection based upon the appearance of impropriety before the court issued a judgment unfavorable to him; the appellate court finding that the facts were known to the party because they occurred over the course of twenty-seven years while *all were living in the same small community*).

*Wia*, the OAG is barred from complaining – for the first time in nearly two years since Mr. Moylan assumed office – that Judge Tolentino is disqualified because of Mr. Moylan's biological relationship to Judge Tolentino's stepchildren.[9]

Although the Court finds that the OAG has waived any right to object to Judge Tolentino's qualifications to preside over matters in which the Office of the Attorney General and Attorney General Moylan represent the People or a party, because the OAG continues to raise the issue of the "relationship" between Attorney General Moylan and Judge Tolentino/his spouse/stepchildren in over fifty (50) criminal cases assigned to Judge Tolentino, the Court now addresses the substance of the Objection.

**C.     Judge Tolentino is not related to Attorney General Moylan either by consanguinity or affinity within *any* degree; therefore, there is no relationship to disclose under Guam Law or the Model Code.**

The threshold question in determining whether Judge Tolentino is disqualified under Section 6105(b)(5)(A) or (B) is whether he (or his spouse) is related within three degrees to a *party* to the proceeding or to a *lawyer* to the proceeding. A familial relationship may be established by consanguinity or affinity. If established by consanguinity, it is a relationship by ties of blood; if established by affinity, it exists between one spouse and the consanguinity of the other.[10] Thus, "consanguinity" measures the relationship by blood and "affinity" measures the relationship by marriage.[11]

---

[9] *See,* this Court's *Decision and Order Denying the OAG's Statement of Objection and Motion to Disqualify* in *People v. Ybanez,* Superior Court of Guam Criminal Case No. CF0447-23 (Jun. 12, 2024), which rejects the Objection filed therein by the OAG as procedurally defective. It is unknown why the OAG fails to acknowledge or discuss *Ybanez,* which reached a diametrically opposed conclusion to the decisions of the courts in *Aguon* and *Taitingfong.*

[10] *See, generally,* 46 Am. Jr. 2d *Judges* § 112 (Aug. 2024).

[11] *Id.* (citing *Alabama State Personnel Bd. V. Garner,* 4 So.3d 545 (Ala. Civ. App. Ct. 2008)). See also, *Suggs v. State,* 51 N.E.3d 1190, 1194 (Indiana 2016) ("Related by marriage" is commonly referred to as affinity, which is defined as 'the connection existing in consequence of marriage between each of the married persons and the kindred of the other. It is distinguished from consanguinity, which denotes relationship by blood.'") (citation omitted).

The disqualification provisions of Section 6105 and Canon 3 of the Model Code bar a judge from presiding over matters where the judge or his spouse is *within three degrees of relationship* (e.g., consanguinity or affinity) to a party or a lawyer in the proceeding. 7 GCA § 6105(d) provides that "[t]he degree of relationship is calculated according to the civil law system,"[12] and "third degree of relationship" is defined in the Model Code as the "great-grandparent, grandparent, parent, uncle, aunt, brother, sister, child, grandchild, great-grandchild, nephew or niece."[13] Neither Judge Tolentino nor his wife are related by blood or origin (consanguinity) nor by marriage (affinity) to Attorney General Moylan as Mr. Moylan does not fall under any of these relationships.

Extending the "third degree of relationship" beyond that which is contained in the Model Code to include *relationship by affinity (marriage)*, Attorney General Moylan is not related by affinity to *either* Judge Tolentino *or* the judge's spouse. The "relationship" between Judge Tolentino and Attorney General Moylan is best illustrated by the legal maxim of *"affinis mei affinis non est mihi affinis"* or "A relative of my relative by marriage is not my relative." *Suggs v. State*, 51 N.E.3d 1190, 1194-1195 (Indiana 2016) (quoting Ballentine's Law Dictionary with Pronunciations 45 (3d ed. 1969)). More clearly stated, in determining whether two persons are related by affinity, or marriage, "the relationship does not exist where more than one marriage is required to establish it." *Johnson v. State,* 169 Tex.Crim. 146, 147, 332 S.W.2d 321, 322 (Tex. Ct. Crim. App. 1960). Thus, Judge Tolentino is not related to Attorney General Moylan within *any* degree of affinity or relationship.

---

[12] *See, Alabama State Personnel Bd., supra* ("The civil law method of computing degrees of kinship is to begin the count with one of the persons in question and proceed up to the common ancestor and then down to the other person, calling it a degree for each person both ascending and descending. The number thus counted expresses the degree of kinship.") (finding no duty to recuse because judge and attorney in case were not related within the required degree).
[13] See Model Code, Attachment A at p. 10 ("Terminology").

Moreover, the dissolution of the marriage between Judge Tolentino's wife and Attorney General Moylan over twenty years ago also terminated the "affinity" between the former spouses resulting from such marriage. *Herrera v. Hernandez,* 80 Cal.Rptr.3d 491, 494 (Cal. Ct. App. 6th Dist. 2008) (dissolution of marriage terminates affinity between parties arising from such marriage for purposes of determination of whether a juror is subject to challenge for bias even if the former spouses have a child together). Consequently, while Judge Tolentino and his stepchildren enjoy a relationship of affinity in the first degree to each other by virtue of the judge's marriage to their mother,[14] there is absolutely no relationship to any degree between Judge Tolentino and Attorney General Moylan. Consequently, the provisions of Section 6105 do not apply.[15]

**D. The OAG has provided no legal authority nor factual averments necessary to establish a relationship requiring disqualification or recusal under Section 6105.**

The OAG relies heavily on the decisions in *People vs. Taitingfong,* Criminal Case No. CF0024-24 (Jun. 4, 2024) (Iriarte, J.), and in *People vs. San Agustin,* 2024 Guam 2 in support of its Objection. However, neither case provides legal support for the finding that Judge Tolentino is disqualified from presiding over cases in which the OAG is involved, as both can be distinguished from the case before this Court.[16] Curiously, Acting Chief Prosecutor Rudolph fails

---

[14] *In re Joseph & Sally Grablich Trust,* 984 N.W.2d 517, 552-553 (Mich. Ct. App. 2021) (citing *Bliss v. Caille Bros. Co.,* 113 N.W. 317 (Mich. 1907) ("when a couple marries, each spouse becomes related by affinity to the other spouse's *blood* relatives by the same degree") (emphasis added)).

[15] Attorney General Moylan is not a "party" to the criminal proceeding under Section 6105(b)(5)(A), but merely a *representative* of the People, who, along with the Defendant, are the only "party" to the criminal case. See, *People v. Robinson,* 27 Misc.3d, 635, 637, 898 N.Y.S.2d 438, 439 (Sup.Ct. 2010)("the only parties to criminal litigation are the People, *represented* by the district attorney of the county, and the accused, represented by assigned or retained counsel."); 5 GCA § 30103("The Attorney General shall have ... the right ... to bring action on behalf of Guam representing the citizens as a whole for redress of grievances which the citizens individually cannot achieve.... ." As such, Section 6105(b)((5)(A) does not apply because Judge Tolentino is not related within three degrees to a *party.*

[16] In both cases, the Defendant, not the OAG filed the Objection. Moreover, trial courts are not bound by the decisions of other trial courts' ruling on the same issue; therefore, this Court does not adopt the ruling in *Taitingfong.* Although *San Agustin* is controlling law in this Court, it is inapplicable in this case because it does not involve the circumstances addressed by the Guam Supreme Court in *San Agustin.*

to cite or discuss this Court's *Decision and Order Denying the OAG's Statement of Objection 7 GCA § 6107 And Motion to Disqualify* in *People vs. Ybanez,* Superior Court of Guam Criminal Case No. CF0447-23 (Jun. 12, 2024) in its Objection despite Ms. Rudolph having filed the Objection in that case and being served with the Court's decision denying the same.[17]

### 1. *San Agustin* does not apply to the instant case.

The OAG misapplies the holding of the Guam Supreme Court in *San Agustin,* which is largely procedural. Summarized in its most simple form, the rule in *San Agustin* is that a judge who is disqualified from presiding over a case must also be disqualified from serving as the recusal judge in the same case. *San Agustin* at ¶ 36 ("We exercise our supervisory authority to clarify that a disqualified judge should not be appointed as a recusal judge."). *San Agustin* does not, as the OAG contends, extend in any way to support a finding that Judge Tolentino is disqualified in the instant case or in all cases involving Attorney General Moylan. Neither that question nor one remotely like it was before the Guam Supreme Court in *San Agustin.*[18]

---

[17] See, *Decision and Order Denying the OAG's Statement of Objection 7 GCA § 6107 And Motion to Disqualify* in CF0447-23 (Jun. 12, 2024), which was served upon the OAG via Email on June 12, 2021; *Notice of Entry on Docket of Decision and Order Denying the OAG's Statement of Objection 7 GCA § 6107 And Motion to Disqualify* (Jun 13, 2024) which was served upon the OAG via mail on June 13, 2024. There is no explanation for the glaring omission of this Court's Decision in *Ybanez* from the OAG's Objection and less of an excuse for is absence given that the OAG's Response contains a brief mention of this Court's Decision, without discussion or cursory attempt at distinction. See Response at p. 3. Ms. Rudolph is reminded that Rule 3.3 of the Guam Rules of Professional Conduct mandates a lawyer practice candor toward the tribunal and not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client. It is insufficient that the Response contain a subtle nod to *Ybanez* as "disqualification was denied in one matter." Response at p. 6.

[18] In *San Agustin,* Judge Tolentino voluntarily recused himself from hearing the criminal matter due to a close personal relationship with both defendants in that case. As distinguished from the instant matter, the conflict involved *parties* to the criminal proceeding, not Attorney General Moylan, who is not a party in this case. *See,* fn. 15, *supra.* More importantly, *San Agustin* addressed whether Judge Tolentino, who had previously recused himself from presiding over the trial court case, was also disqualified from sitting as the recusal judge in the same case. The Supreme Court simply decided, as to Judge Tolentino's recusal decision, "Under 7 GCA § 6107, a disqualified judge lacks the power to hear and determine the matter. Once disqualified, a judge can take no action – even when acting in a limited capacity as a recusal judge." The substantive question of disqualification involved facts very specific to Presiding Judge Alberto C. Lamorena III and Attorney General Moylan and, therefore, are distinguished on those facts from application here.

## 2. The Court's Decision and Order in *Ybanez* applies here.

In *People v. Ybanez et al.,* Superior Court of Guam Criminal Case No. CF0447-23 (Jun. 12, 2024), this Court rejected the OAG's Motion to Disqualify Judge Tolentino on identical grounds, finding:[19]

> Judge Tolentino's spouse is not a party to the proceeding, or an officer, director, or trustee of a party. She is not acting as a lawyer in the proceeding; nor known by the Judge to have an interest that could be substantially affected by the outcome of the proceeding. She is not, to the Judge's knowledge, likely to be a material witness in the proceeding. Therefore, none of these circumstances applies to Judge Tolentino to invoke the mandatory disclosure requirements of Section 6106.

This Court ruled further that Judge Tolentino's prior recusals due to Mr. Moylan's biological relation to his stepchildren did not mandate his disqualification under the circumstances, particularly where there is no allegation of a conflict other than the mere fact of a familial relationship between Mr. Moylan and the judge's stepchildren:

> ...[I]n considering disqualification under Section 6105(a), "what matters is not 'actual bias,' but the 'appearance of bias.'" *Van Dox* ¶ 32, citing *Dizon v. Super Ct.,* 1998 Guam 3 ¶ 8. In evaluating the OAG's claims, this Court assumes as true all evidence found in the record and in the Objection, even if uncorroborated by additional evidence, and applies "the standard of a 'reasonable person' who knows all the facts, and understands the contexts of the jurisdictions, parties, and controversies involved..." *Id.* ¶ 32, quoting *Ada v. Gutierrez,* 2000 Guam 22 ¶¶ 12-13. Moreover, "[a] court should not hypothesize about what the reasonable person would believe only upon the moving party's allegations. Instead, it should decide what the reasonable person would believe about a judge's partiality given all the relevant facts in the controversy." *Ada* ¶ 12.
>
> &ast;&ast;&ast;
>
> In the instant case, the non-disclosure of the relationship complained of by the Office of the Attorney General did not fall within the specific disqualification provisions of 7 GCA § 6105(b); therefore, Judge Tolentino was not required to disclose and seek any waivers or agreements from the

---

[19] The Court incorporates its Decision in *Ybanez* herein as if fully set forth.

parties under Section 6016. As such, the Court **DENIES** the Objection of the OAG to Judge Tolentino's competency on these grounds.[20]

Despite filing a Response to Judge Tolentino's Answer on August 14, 2024, just a few weeks after the *Ybanez* Decision, the OAG failed to address this Court's ruling therein or otherwise proffer a good faith argument to rule differently in this case.[21] Thus, the Court's ruling *Ybanez* is as applicable to the instant case despite the OAG's urgings to adopt *Taitingfong* and *San Agustin*.

### 3. Judge Tolentino is not biased *per se*.

In its Response to Judge Tolentino's Answer, the OAG argues that Judge Tolentino is "Biased, Per Se." Response at p. 3. However, the OAG provides no sound legal authority in support of this bare assertion. Indeed, the Court is gravely concerned that the arguments advancing this position completely misrepresent the current state of the law by arguing a position that was clearly rejected by the drafters of the statute mandating disqualification. In the 1985 Comment to Section 6105(b), the Compiler noted:

> 1985 COMMENT: This drafter has heard many comments from attorneys who have objected to the procedure provided in the Guam CCP. Many attorneys have shown a preference for the California method of determining disqualifications. However, the California CCP, § 170, is adapted to the multiple-court system in California. Such a system cannot be transferred without change to Guam because of our unified, single court system. **Therefore, this Section adopts those portions of California § 170 which deal with the procedure, but not substance of judicial disqualifications and they have been adapted to Guam.**
>
> Not included is an equivalent of California CCP § 170.6 - relative to disqualification for prejudice. Under this law, an attorney could, by filing an affidavit only, require that a judge recuse himself. After receiving comments on both sides of this question, this drafter believes that the foregoing sections provide adequate relief for judicial bias, prejudice and conflict of interest. *To **add** the **California** law **permitting** **automatic***

---

[20] See, *Ybanez* at pp. 13-15.

[21] A single clause in the Response acknowledges the birth of the birth of the *Ybanez* decision, but proffers nothing more by way of discussion or distinction. See Response at p. 3 ("…and disqualification was denied in one matter, i.e., *People v. Richard Y. Ybanez, et al.*, CF0447-23….").

***disqualification upon an affidavit of prejudice could, in practice, result in the Bar making de facto assignments of judges on the Court. The procedure provided here allows an unbiased review of disqualification, but does not permit automatic disqualification without the judge's having met specific grounds of disqualification.***

(emphasis added).

It is incontrovertible that Cal Civ Pro § 170.1 is *not* identical to Guam's statute. The Guam Legislature *did not* adopt the requirement that a judge recuse him or herself automatically where a lawyer in the proceeding is the former spouse of the judge's spouse. A plain review of the California statute would reveal this glaring difference.

> § 170.1. Grounds for disqualification. (a) A judge shall be disqualified if any one or more of the following are true: * * *
> (4) The judge, or the spouse of the judge, or a person within the third degree of relationship to either of them, or the spouse of such a person is a party to the proceeding or an officer, director, or trustee of a party.
> **(5) A lawyer or a spouse of a lawyer in the proceeding is the spouse, *former spouse*, child, sibling, or parent of the judge or the judge's spouse or if such a person is associated in the private practice of law with a lawyer in the proceeding.**

Cal. Civ. Proc. Code § 170.1 (West) (emphasis added).

In contrast, Guam's judicial disqualification statute 7 GCA § 6105(b)(5)(A) and (B) reads:

> (5) Where **he** or she **or his** or her **spouse, or a person within the third degree of relationship to either of them,** or the spouse of such person:
>     (A) is a party to the proceeding, or an officer, director, or trustee of a party;
>     (B) **is acting as a lawyer in the proceeding;** ... .

Not included in Guam's statute is paragraph (5) of the California Code: "A lawyer or a spouse of a lawyer in the proceeding is the spouse, *former spouse*, child, sibling, or parent of the judge or the judge's spouse or if such a person is associated in the private practice of law with a lawyer in the proceeding." To argue that this is a procedural distinction, rather than a substantive one, is erroneous; however, it does not change the fact that the Guam Legislature rejected the

automatic disqualification provisions where a former spouse of the judge's spouse appears as a lawyer in a proceeding before it. The OAG has not provided any legal authority to support a finding that the Guam Legislature intended to adopt the same provisions despite the clear omission of the language in Section 6105.

**4. Under an "objectively reasonable person" standard and considering the American Bar Association's Formal Opinion 488, Judge Tolentino was not required to disqualify himself in this case.**

Finally, the Court addresses the "objectively reasonable person" standard requirement in viewing the disqualification question in this case. The OAG correctly states the legal standard applicable in determining whether a judge must be disqualified under the provisions of Section 6105, quoting *San Agustin:* "A court should not hypothesize about what the reasonable person would believe about a judge's partiality *given all the relevant facts* in the controversy. ... Under this objective test, ... 'the court asks whether a person with knowledge of all the facts would perceive a significant risk that the judge will resolve the case on a basis other than the merits.'" Objection at p. 4 (quoting *San Agustin* at ¶ 23) (emphasis added). Judge Tolentino's detailed Answer provides relevant facts establishing that no close personal relationship exists between himself and Attorney General Moylan, nor between Judge Tolentino's wife and Mr. Moylan. The OAG's Objection and Response only declare, without citing specific facts, that a close personal relationship exists.

In its Formal Opinion 488 (Sept. 5, 2019), the American Bar Association, considering judges' obligation to disqualify themselves in proceedings in which they have social or close personal relationships with the lawyers or parties other than a spousal, domestic partner or other close family relationship, looks to Rule 2.11 of the Model Code of Judicial Conduct ("Model Code") requiring disqualification "because their impartiality might reasonably be questioned."

ABA Formal Op. 488 at 1 (Sept. 5, 2019) (citing N.Y. Jud. Adv. Op. 11-125, 2011 WL 8333125 *4 (Oct. 27, 2011). In this regard, the ABA opined that "Judges are ordinarily in the best position to assess whether their impartiality might reasonably be questioned when lawyers or parties with whom they have relationships...appear before them." Id. However, the ABA notes that "in smaller communities and relatively sparsely-populated judicial districts, judges may have social and personal contacts with lawyers and parties that are unavoidable. *In that circumstance, too strict a disqualification standard would be impractical to enforce and would potentially disrupt the administration of justice.*" Formal Op. 488 at 2 (emphasis added). The ABA also recognized that over time relationships change "or may have ended sufficiently far in the past that it is not a current concern when viewed objectively." Id. "Finally, judges must avoid disqualifying themselves too quickly or too often lest litigants be encouraged to use disqualification motions as a means of judge-shopping, or other judges in the same court...become overburdened." Id.

The Formal Opinion tracks the rationale of *San Agustin,* wherein the Guam Supreme Court declared, "Our recusal statute promotes fairness by avoiding the appearance of bias, but a party's one-sided perception of an appearance of bias is not grounds for disqualification." *San Agustin* at ¶ 25. The OAG advances its Objection solely on a "familial relationship" and a claim by Chief Prosecutor Rudolph that this relationship is "significant and continuing" without *any* facts presented to illustrate this condition. This is simply not enough.

Adopting the recommendations of the ABA in its Formal Opinion 488, and, based on the objective reasonable person standard and considering the Answer filed by Judge Tolentino and the judicial community and the lack of factual support provided by the OAG, as well as the context in which the disqualification is sought, the Court makes the following findings:

1. Other than the mere fact of a biological relationship between Attorney General Moylan and Judge Tolentino's stepchildren, there is no credible evidence of any relationship – within three degrees or otherwise – between Mr. Moylan and Judge Tolentino.

2. The circumstances since October, 2022 under which Judge Tolentino disqualified himself voluntarily have changed, and there is no evidence to contradict Judge Tolentino's description of the meeting between Attorney General Moylan, the AG's staff, Judge Tolentino and court staff affirming that any conflict relating to the familial association which previously existed between Judge Tolentino and Attorney General Moylan "no longer existed," therefore, Judge Tolentino is not required to disqualify himself under Section 6105;

3. Neither Judge Tolentino nor his spouse (as the former wife of Attorney General Moylan) are within the third degree of relationship to any party to the proceeding nor to anyone acting as a lawyer in the proceeding, as there is no legal authority cited by the OAG which affirms a relationship within three degrees after the termination of a marriage, which is a relationship by affinity;

4. Attorney General Moylan is not a "party" to the proceeding, but a representative of the People of Guam in matters brought in the name of the People of Guam;

5. Attorney General Moylan and Mrs. Tolentino's children are now grown adults living on their own, which poses a significant change in relationships distancing Judge Tolentino from Attorney General Moylan;

6. There is no evidence of a "close personal relationship" between Mr. Moylan and Judge Tolentino requiring disqualification under Section 6105 or the Model Code;

7. In this small legal community in Guam and with a trial court bench consisting only of four (4) dedicated criminal court dockets, requiring Judge Tolentino, who is one of the four (4) judges assigned to the criminal docket, to disqualify himself pursuant to Section 6105 from all cases in which Attorney General Moylan represents the People of Guam would (a) be impractical to enforce, (b) negatively impact the efficient administration of justice, and (c) lead to judge-shopping and/or overburden other judges in the same court.[22]

Having made the following findings, the Court finds that Judge Tolentino is not required to disqualify himself under Section 6105(a) and rejects the OAG's Objection.

## CONCLUSION

Although this Court finds that the OAG has failed to raise the issue of Judge Tolentino's disqualification timely and therefore has waived any right to advance it now, even if it were raised at the earliest practicable time, no disqualifying facts exist to support Judge Tolentino's disqualification in cases involving Attorney General Moylan and/or the Office of the Attorney

---

[22] Indeed, the filing by the OAG of over fifty (50) identical Objections to Judge Tolentino's assignment in criminal cases has had a significant negative impact on the caseload of the three remaining dedicated criminal courts. For example, asserted speedy trial cases in which Judge Tolentino was assigned pursuant to the Administrative Rule were reassigned to other criminal judges due to the running of the speedy trial clock. In CF270-24, *People v. Michael Gregory Rosal,* this Court was assigned to take the matter to trial with only *four* days remaining on his speedy trial clock. See. Min. of Aug. 2, 2024 Hrg. at 9:22:26 AM. On August 2, 2024, despite that the matter had been pending before Judge Tolentino since May 24, 2024, and the Defendant having asserted his right to speedy trial on June 21, 2024, the People were unprepared for trial and failed to file any witness lists by the Pre-trial Conference. On August 2, 2024, the People filed a Memorandum Supporting People's Motion to Dismiss Without Prejudice in the Interest of Justice and the Court granted the dismissal but has reserved on the issue of whether it will be dismissed with or without prejudice. *Id.* The Court expresses grave concern about whether these Objections have been filed by the OAG in good faith. In at least one case assigned to this Court, *People of Guam v. Prima Sebastian,* Criminal Case No. CF0506-24, the Objection, filed on July 29, 2024, was pending this Court's determination as recusal judge (see Ntc. of Assignment of Recusal Judge (Jul. 31, 2024) and CR1.1 Form 3 (Aug. 1, 2024)) when the People filed a Motion to Dismiss on August 12, 2024. Despite the August 12, 2024 Motion to Dismiss, on August 13, 2024, the People filed a Response to Judge Tolentino's Answer. One might contemplate that perhaps the assigned prosecutor filed the Motion to Dismiss without Chief Prosecutor Rudolph being aware of the Motion when she filed the Response. However, Chief Prosecutor Rudolph filed both the Motion to Dismiss on August 12, 2024, and the Response on August 13, 2024. Magistrate Judge Jonathan Quan granted the Motion to Dismiss on August 13, 2024. Order (Re: Dismissal Without Prejudice) (Aug. 13, 2024).

General. This Court finds that Judge Tolentino is not disqualified under 7 GCA § 6105(b)(5)(A) or (B) or Canon 3 of the Model Code from presiding over this case on the grounds that he has any familial association with Attorney General Moylan. Notwithstanding Attorney General Moylan's biological relationship to Judge Tolentino's stepchildren and former marriage to Mrs. Tolentino, neither Judge Tolentino nor his wife are related within three degrees to Attorney General Moylan either by affinity or consanguinity, regardless of whether Mr. Moylan is a party to the litigation (which he is not) or appearing as a lawyer for a party.

For the reasons stated herein, the OAG's Statement of Objection and Motion to Disqualify is REJECTED and the Motion is DENIED. This case shall be returned to Judge Tolentino for further disposition.

**SO ORDERED** this 30th day of August, 2024.

_____
**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:
_AG, POSC_

8/30/24  3:56p
Date    Time

Antonio P Cruz
Deputy Clerk, Superior Court of Guam